UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

Kat Florence Design Limited,
a foreign limited liability company            18 cv 03653

        Plaintiff,                               COMPLAINT

vs.
                                                Plaintiff demands a
Sarah Jessica Parker and                        trial by jury.
Tandu Productions, Inc.,

        Defendants.
-----------------------------------------------------------X

    COMES NOW, the Plaintiff, Kat Florence Design Limited, by and through undersigned counsel, and sues the Defendants, Sarah Jessica Parker, individually, and Tandu Productions, Inc. and in support thereof would state as follows:

**Preliminary Statement**

    This is a case seeking damages for breach of an endorsement agreement in relation to the marketing and sale of designer jewelry. The Defendant Kat Florence Design Limited ("Kat Florence") is a company engaged in the business of creating and selling designer jewelry. The Defendant, Sarah Jessica Parker ("Parker") is an actress and entrepreneur. Defendant Tandu Productions, Inc. is an entity created by Ms. Parker for the purpose of licensing out Defendant Parker's name and likeness in exchange for compensation.

    The parties entered into an endorsement agreement which included the Plaintiff creating a line of jewelry along with Defendant Parker for marketing and sale. The parties agreed that the Defendant Parker would license her name and likeness as set forth in the attached endorsement

agreement to the Plaintiff to utilize and support for marketing purposes the line of jewelry being created.  Each party had certain obligations as set forth in the agreement.

The Plaintiff alleges herein that the Defendant failed to meet such obligations which ultimately prevented the launch of the jewelry in the manner in which the agreement contemplated.  The Plaintiff spent significant monies in anticipation of the agreement that were lost as a result of the breach and suffered further losses related thereto.  The Plaintiff is now bringing this action for breach of the endorsement agreement and related causes of actions against the Defendants accordingly.

## Jurisdiction and Venue

1. This court has jurisdiction over this action pursuant to 28 U.S.C. §1332. There is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue is proper herein as the contract at issue was entered into in the state of New York and the operation of the same was to occur in whole or in part in the state of New York. There additionally exists a selection of venue clause in the attached agreement designating the same.

## Parties

3. Plaintiff is a company organized under the laws of the Republic of Cyprus.

4. The Defendant Sarah Jessica Parker, is sui juris, and a citizen of the state of New York.

5. The Defendant Tandu Productions, Inc. is corporation organized under the laws of the state of New York and doing business in the state of New York.

## Facts Common to All Counts

The Plaintiff realleges and reavers paragraphs one through five as though fully set forth herein.

6. The Plaintiff, Kat Florence Design Limited ("Kat Florence"), is a company engaged in the business of custom design and manufacture of high quality jewelry.

7. The Defendant Sarah Jessica Parker ("Parker") is a well known actress both domestically and abroad.

8. The Defendant Tandu Productions, Inc. ("Tandu") is an entity that has been given the right to offer the services of the Defendant Parker for licensing and related opportunities.

9. On or about October 9, 2015 the Plaintiff and the Defendants entered into an Endorsement Agreement. (See attached October 9, 2015 Endorsement Agreement) The purpose of the agreement was to have Parker promote and assist in the advertising and marketing of the Plaintiff's jewelry products in various types of media and related venues.

10. Specifically, the parties agreed that the Plaintiff Kat Florence would start a special line of high-end jewelry made of D color flawless diamonds and other gem types. The name of the line would be the Sarah Jessica Parker (SJP)/Kat Florence Line ("line").

11. In addition, the Plaintiff agreed to start at least (3) high-end stand alone shops in major European capitals including London, Rome, and/or Berlin. The parties agreed that the line would be displayed and sold in these physical locations.

12. The Defendant Parker agreed to authorize the use of her name and likeness in relation to the line for the purposes of advertising and promotion. The services required of the Defendant are more fully set forth in paragraph 1(i) of the Endorsement Agreement but

includes photo shoots, personal appearances, and personal interviews in support of the line.

13. As to the line itself, the parties agreed that the Plaintiff would design and manufacture a high-end, high-quality line of jewelry with the Defendant Parker having the final approval.

14. During the course of the negotiations, at all times the Defendant Parker represented that she was willing and able to fully perform the contract and would make herself available for the obligations thereunder.

15. The parties thereafter agreed to a term of five (5) years commencing on the date of the contract and expiring on October 8, 2020.

16. As consideration for the use of the Defendant's likeness and participation in the marketing and promotion of the line, the Plaintiff agreed to pay the Defendant the amount of $5,000,000.  The fee was to be paid over a period of time during the course of the agreement.  An additional 10% of all company profit exceeding $ 5,000,000 was to be paid to the Plaintiff. Later the Plaintiff asked to amend this into a straight-forward additional $500,000 per year, increasing the total value of the contract to $7,500,000.00.

17. Upon the contract getting underway, the Defendant began to perform.  The Plaintiff in fact paid the Defendant fully as to each installment due thereunder.  However, shortly after beginning the agreement, all good faith performance of the agreement ceased.

18. As stated above, the entire essence of the agreement was the creation, marketing, promotion and sale of the Sarah Jessica Parker/Kat Florence Jewelry line, and the establishment of a SJP/Kat Florence Jewelry partnership image and good will.  A

substantial amount of work and expense went into the creation and ultimate sale of such a line. The Defendant Parker agreed to be part of the process in exchange for a payment over time of $7,500,000.00. Notwithstanding such agreement, she refused to properly participate and comply with her contractual obligations, making the success of this enterprise impossible.

19. For example, one of the most significant aspects of introducing the line for sale is the initial launch. The Defendant agreed, per the contract, to participate in the initial launch including making a personal appearance, promoting the brand, etc. However, this participation did not occur. On August 25, 2016 the Plaintiff sent an email to the Defendant requesting her attendance for the initial launch event. This event was set for a red carpet evening event at the end of October, 2016 or early November, 2106, from 6 pm to 9 pm depending on the availability of the Defendant for an evening appearance. The Defendant was notified that this was an evening event and advised her of the time commitment required. This attendance was part of the obligations set forth in the endorsement agreement. In order to properly prepare this cornerstone event and formal beginning of SJP/Kat Florence co-operation, the Plaintiff hired worldwide acclaimed Edelman PR company to manage the launch of the collection and store opening. This contract was a $1,000,000 expense, paid entirely by the Plaintiff.

20. The event itself was very difficult to set up as it required months of planning including publicity, logistics, etc. Based on the amount of time and money that was going into the event, the Plaintiff wanted to give the Defendant an ample amount of time to plan ahead accordingly and make herself available to attend.

21. The Defendant however, refused to timely respond whether she was or was not available.  She refused to timely advise that the date and time would not work for her and/or failed to timely advise as to alternative dates so that the event could be planned around her schedule.   It took her, through her assistants and agents, over three weeks just to get back with a date and time.

22. Upon finally responding with a date for the most important event of the entire agreement, which took more then three weeks to do so, the Defendant stated that she was only available on one date, a Tuesday morning and afternoon, of October 25, 2016, from 10:00 A.M. to 4:00 P.M.  This date and time could not possibly work for the evening product launch that was being planned and was part of the contractual obligations.  Notwithstanding, the Defendant refused to provide any alternative evening times or dates. In fact, the Defendant was informed about the event format, a dinner event, since August 25, 2016 when Defendant's agent received Edelman's event planner, and her attendance offer for a lunch event only, i.e. from 10:00 A.M. to 4:00 P.M. was equivalent to a refusal to participate entirely in the dinner event.

23. As a result of the Defendant's failure to attend the signature event, the event had to be cancelled as the launch of Sarah Jessica Parker D-Flawless Diamond collection without her attendance made no sense.

24. In addition to the above, the Defendant additionally told the Plaintiff well after the agreement was entered into and after she received one or more of the initial payments, that she would not be available to do anything under the agreement for a period of five (5) months, i.e. November, 2016 through March, 2017 due to her new television show, "Divorce."

25. In fact, in response to why she waited so long to even provide any date for the launch her assistant responded as follows:

There are a lot of pending commitments surrounding the release of her new show which is also in October, so she needs to be sure her schedule is free and clear before she gives a definite answer on the below.

This response, which is similar to the position taken throughout this agreement demonstrates that the contract in which she has been paid millions of dollars to promote a new jewelry line is second compared to her acting career. While it is understandable that the Defendant may have additional commitments, if she was going to accept a substantial sum of money and further understand that substantial investment in time and money is being made due to her acceptance, she should further understand that she needs to follow through on her commitments and treat them in manner at least equal to her other professional activities.

26. Notwithstanding, the fact that she advised of her unavailability for a period of October, 2016 through March 2017 due to commitments to her show only after the contract was entered into and after she was paid a portion of the fee, demonstrates a further operation of bad faith. The Defendant was well aware that the line needed to be launched in time for the holiday season in November and December, 2016. She further knew that if it could not be, the Plaintiff would suffer substantial damages. Yet, she announced not far from this time period that she was unavailable throughout the entire holiday season and three months thereafter. This action essentially destroyed the viability of launching the line.

27. The Defendant additionally engaged in other actions that were contrary to the obligations in the contract as well as her obligations of operating in good faith. For

example, she refused to attend other events claiming her scheduling was too hectic. In addition, she refused to do interviews in relation to the jewelry line. The interviews were not only part of her contractual obligations but represented a large piece of marketing and promotion. The Plaintiff needed those interviews to use with the publicity company that it retained to promote the new line.

28. Instead of doing the interviews, the Defendant simply claimed that it would be better for the Plaintiff if she promoted her own television show instead which would then indirectly assist the Plaintiff in promoting her line. Putting aside whether that was true, which it was not, it was not for the Defendant to determine the marketing strategies of the Plaintiff on her own. Furthermore, the interviews in question were not even supposed to be personal interviews but merely answers to a list of questions, via email. The failure to do the interviews caused a substantial loss of publicity.

29. Finally, the Defendant refused to attend the opening of the London store to sell the new line. The store opening was specifically part of the promotion strategy and set forth in the agreement. The Defendant claimed that she was too busy to attend and could not leave New York and travel to London to be there in person for the opening. However, the Plaintiff thereafter discovered that the Defendant Parker had in fact traveled to London, within the same interval of time, and could have easily attended the store opening. Yet, instead of attending an essential event of the co-operation with the Plaintiff, the Defendant engaged in activities to promote her line of perfume, a product unrelated to the Plaintiff.

30. These types of actions by the Defendant have been commonplace throughout the operation of the agreement. The Plaintiff's business and the Defendant's contractual

obligations have been secondary to other matters in her professional life.  There have been accounts on social media in regards to such actions to the extent that there is confusion as to whether the Defendant is even involved in the line and/or with the Plaintiff.  In fact, various customers of the Plaintiff even questioned whether the declared co-operation between Defendant Parker and the Plaintiff ever even existed.

31. The Defendant has further failed to make any significant efforts to endorse the Plaintiff's products per the agreement.  She has refused to wear any of the jewelry outside of shooting for the catalogue.  The Plaintiff in fact offered to have her and/or her stylist engage in a custom design for her so that she would be comfortable wearing the jewelry.  Neither the Defendant, or even her stylist, would even return the Plaintiff's communications on this matter.  Jewelry was additionally sent to her by the Plaintiff to review and wear and the Plaintiff received no response.  The Defendant even refused to do the simplest of marketing and promotion such as follow the Plaintiff on Instagram, despite several specific requests to do so.  Such an effort would have taken a matter of seconds to complete.  Rather, Defendant endorsed, followed and/or supported on her social media postings several other companies, including jewelry competitors, rather supporting or posting anything in support of the Plaintiff's brand.

32. In fact, there were fashion and jewelry events attended by both the Defendant and the Plaintiff's principal in New York where the Defendant would not even acknowledge her, let alone make efforts to promote the brand. For example, at the 2017 Golden Globes red carpet event the Plaintiff was supposed to present the jewelry line from "Sarah Jessica Parker."  The Defendant Parker in fact separately attended the event.

Yet despite the line being featured at the event, and both the Plaintiff and the Defendant being there, the Defendant inexplicably failed to speak with, recognize or take a single photo with the President of the Plaintiff or any member of the company. She in fact made no effort to even acknowledge that she had any relationship to the brand, despite the fact that her name was on it and she was being paid to promote the brand as part of the contract.

33. As a direct and proximate result of the above described actions, the Plaintiff has suffered substantial damages. Specifically, the Plaintiff spent millions of dollars in the purchase of certain diamonds, sponsorship, opening up a London store, publicity, and other expenses in anticipation of launching the Sarah Jessica Parker line. As a result of the Defendant's actions, the line was never launched. The Plaintiff additionally had to close the London store because of lack of a viable product. The Plaintiff also now has diamonds that cannot be used as part of the line in its inventory that were purchased specifically for this reason. The line, at this time, has in fact for all practical purposes, been damaged beyond repair.

**Count I**
**Breach of Endorsement Contract**
**Sarah Jessica Parker and Tandu Productions**

The Plaintiff realleges and reavers paragraphs one through thirty-three as though fully set forth herein.

34. As stated above, the Plaintiff and the Defendants entered into an endorsement contract which required the Defendants to perform certain marketing activities for the promotion of the new jewelry line between the Plaintiff and the Defendant Parker. The specific obligations are set forth in the agreement.

35. The Defendants Parker and Tandu breached the agreement as follows:

   A.  The Defendant failed to provide one personal appearance, of up to two (2) consecutive hours in a major European capital city in connection with the opening of Kat Florence's stand-alone flagship store in violation of paragraph 1(i)(c) of the agreement.

   B.  The Defendant failed to provide a personal interview during which SJP was required to describe her feelings about the Kat Florence brand and about wearing Kat Florence's jewelry Products in violation of paragraph 1(i)(d) of the agreement.

   C.  Each calendar year of the agreement, the Defendant failed to provide two production shoots of up to three consecutive days wearing Kat Florence jewelry.

   D.  The Defendant failed properly and/or adequately mention during interviews and/or other professional engagements that she likes Kat Florence Jewelry in violation of paragraph 1(i)(g) of the agreement.

   E.  The Defendant failed to use good faith efforts, energies and abilities with regard to the services set forth in the agreement.  She further failed to follow in good faith the reasonable instructions and/or directions of the Plaintiff in relation to the jewelry line including but not limited to the failure to utilize social media in any significant way to promote the brand in relation to the services set forth herein, in violation of paragraph 1(i)(h) of the agreement.

36. The Defendants have additionally breached the agreement by refusing to participate in the marketing and promotion of the brand for a period of five months claiming that her television show commitments were more important then her obligations under the attached agreement.

37. The Defendants have further breached the agreement by failing to make any good faith efforts and/or providing adequate energies with regard to the services rendered.

38. As a direct and proximate result of the breach by the Defendants, the Plaintiff has suffered damages including those amounts expended in contemplation of the agreement and creating a line of jewelry with the Defendants.  Alternatively, the Plaintiff has suffered damages in the amount of monies that it has paid the Defendants to date, for

11

services that were never provided.   Finally, and alternatively, the Plaintiff has suffered damages in the lost profits it would have made had the Defendant fully complied with her obligations under the agreement.

39. The Plaintiff has satisfied all conditions precedent and/or such conditions have been waived.

40. The Plaintiff has provided notice in writing on several occasions to the Defendants that they have failed to comply with the obligations under the agreement . Notwithstanding such notice and opportunity to cure, the Defendants have failed to do so.

41. The Plaintiff has been required to retain the undersigned counsel and has incurred attorneys fees related to the prosecution of this action.  Paragraph 20 of the agreement attached hereto permits the prevailing party to recover their attorneys fees and costs. The Plaintiff thus demands the same in addition to the damages that it suffered as described herein.

WHEREFORE, the Plaintiff respectfully requests that this court grant judgment in its favor and against the Defendants Parker and Tandu for damages as more fully described above, award the costs and attorneys fees related thereto, and for any additional relief this court deems just and proper.

**Count II**
**Negligent Misrepresentation**
**Sarah Jessica Parker and Tandu Productions**

The Plaintiff realleges and reavers paragraphs one through thirty-three as though fully set forth herein.

42. As stated above, the Plaintiff and the Defendants negotiated an agreement whereby the Defendants agreed to commit in part Parker's  time and attention to the endorsement of

a line of jewelry that would bear her name and/or her likeness.

43. The Defendants represented to the Plaintiff that they had in fact the time and availability to engage in the activities as required by the contract.

44. The Plaintiff relied on such representations in entering into an agreement with the Defendants and agreeing to pay $5,000,000 for the promotion of the new line of jewelry. Such reliance was reasonable and justifiable under the circumstances such that there was no indication that any other activities of the Defendants would materially interfere with the obligations of the endorsement agreement.

45. However, after the contract was entered into, the Defendants advised the Plaintiff that the Defendant Parker was unavailable to provide any marketing services or promotion services, including attending the initial product launch and/or any store openings, for a period of five months, i.e. from November, 2016 through March, 2017. This period was essential for the launch of the product as it was at or near the holiday sales season.

46. The Plaintiff relied to its detriment on the Defendant Parker to be available during this time frame and spent millions of dollars in building the line, buying and designing merchandise, opening up a physical location, and obtaining marketing and publicity related thereto. The failure of the Defendants to participate during this time period has resulted in the loss of the line, the loss of the London store, the loss of goodwill and has severely damaged the reputation of the Plaintiff.

47. It was only after the contract was entered into and the Plaintiff spent such monies did the Defendants advise the Plaintiff that Defendant Parker was unavailable for the most important months of the year due to her obligations to her television show, "Divorce" and other professional commitments.

48. The Defendants were negligent to the extent that they misrepresented their time and availability in relation to the performing the promotion activities.  They negligently omitted the fact that the Defendant Parker had alternative commitments that would prevent her from being able to perform the agreement.

49. As a direct and proximate result of the actions of the Defendants, the Plaintiff has suffered damages including but not limited to the amount of monies expended in anticipation of the Sarah Jessica Parker line, loss of reputation, and additional compensatory damages related to the actions of the Defendants.

WHEREFORE, the Plaintiff respectfully requests that this court grant judgment in its favor and against the Defendants Parker and Tandu for damages as more fully described above, award the costs of this matter, and for any additional relief this court deems just and proper.

The Plaintiff demands trial by jury of all counts as described above

>DOWNS LAW GROUP, P.A.
>3250 Mary St. Suite 307
>Miami, Florida 33133
>Telephone No.: (305) 444-8226
>Facsimile No.: (305)444-6773
>Jfriedman@dbwlaw.com
>
>s/ Jeremy D. Friedman
>_____
>Jeremy D. Friedman, Esq.
>Florida Bar No.: 134643