UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

Kat Florence Design Limited,
a foreign limited liability company                    18 cv 03653

        Plaintiff,                                    AMENDED COMPLAINT

vs.
                                         Plaintiff demands a

Sarah Jessica Parker and                               trial by jury.
Tandu Productions, Inc.,

        Defendants.
-----------------------------------------------------------X

      COMES NOW, the Plaintiff,  Kat Florence Design Limited, by and through undersigned

counsel, and sues the Defendants, Sarah Jessica Parker, individually, and Tandu Productions,

Inc. and in support thereof would state as follows:

### **Preliminary Statement**

      This is a case seeking damages for breach of an endorsement agreement in relation to the

marketing and sale of designer jewelry as well as the return of certain specified jewelry from the

Defendant.  The Defendant Kat Florence Design Limited ("Kat Florence") is a company engaged

in the business of creating and selling designer jewelry.  The Defendant, Sarah Jessica Parker

("Parker")  is an actress and entrepreneur.   Defendant Tandu Productions, Inc. is an entity

created by Ms. Parker for the purpose of licensing out Defendant Parker's name and likeness in

exchange for compensation.

      The parties entered into an endorsement agreement which included the Plaintiff creating a

line of jewelry along with Defendant Parker for marketing and sale.  The parties agreed that the

Defendant Parker would license her name and likeness as set forth in the attached endorsement

agreement to the Plaintiff to utilize and support for marketing purposes the line of jewelry being created.  Each party had certain obligations as set forth in the agreement.

The Plaintiff alleges herein that the Defendant failed to meet such obligations which ultimately prevented the launch of the jewelry in the manner in which the agreement contemplated.  The Plaintiff spent significant monies in anticipation of the agreement that were lost as a result of the breach and suffered further losses related thereto.  The Plaintiff is now bringing this action for breach of the endorsement agreement and related causes of actions against the Defendants accordingly.

## Jurisdiction and Venue

1. This court has jurisdiction over this action pursuant to 28 U.S.C. §1332. There is complete diversity of citizenship between Plaintiff and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue is proper herein as the contract at issue was entered into in the state of New York and the operation of the same was to occur in whole or in part in the state of New York.  There additionally exists a selection of venue clause in the attached agreement designating the same.

## Parties

3. Plaintiff is a company organized under the laws of the Republic of Cyprus.

4. The Defendant Sarah Jessica Parker, is sui juris, and a citizen of the state of New York.

5. The Defendant Tandu Productions, Inc. is corporation organized under the laws of the state of New York and doing business in the state of New York.

**Facts Common to All Counts**

The Plaintiff realleges and reavers paragraphs one through five as though fully set forth herein.

6.    The Plaintiff, Kat Florence Design Limited ("Kat Florence"), is a company engaged in the business of custom design and manufacture of high quality jewelry.

7.    The Defendant Sarah Jessica Parker ("Parker") is a well known actress both domestically and abroad.

8.    The Defendant Tandu Productions, Inc. ("Tandu") is an entity that has been given the right to offer the services of the Defendant Parker for licensing and related opportunities.

9.    On or about October 9, 2015 the Plaintiff and the Defendants entered into an Endorsement Agreement. (See attached October 9, 2015 Endorsement Agreement) The purpose of the agreement was to have Parker promote and assist in the advertising and marketing of the Plaintiff's jewelry products in various types of media and related venues.

10.   Specifically, the parties agreed that the Plaintiff Kat Florence would start a special line of high-end jewelry made of D color flawless diamonds and other gem types.  The name of the line would be the Sarah Jessica Parker (SJP)/Kat Florence Line ("line").

11.   In addition, the Plaintiff agreed to start at least (3) high-end stand alone shops in major European capitals including London, Rome, and/or Berlin.  The parties agreed that the line would be displayed and sold in these physical locations.

12.   The Defendant Parker agreed to authorize the use of her name and likeness in relation to the line for the purposes of advertising and promotion.  The services required of the

Defendant are more fully set forth in paragraph 1(i) of the Endorsement Agreement but includes photo shoots, personal appearances, and personal interviews in support of the line.

13.  As to the line itself, the parties agreed that the Plaintiff would design and manufacture a high-end, high-quality line of jewelry with the Defendant Parker having the final approval.

14.  During the course of the negotiations, at all times the Defendant Parker represented that she was willing and able to fully perform the contract and would make herself available for the obligations thereunder.

15.  The parties thereafter agreed to a term of five (5) years commencing on the date of the contract and expiring on October 8, 2020.

16.  As consideration for the use of the Defendant's likeness and participation in the marketing and promotion of the line, the Plaintiff agreed to pay the Defendant the amount of $5,000,000.   The fee was to be paid over a period of time during the course of the agreement.  An additional 10% of all company profit exceeding $ 5,000,000 was to be paid to the Plaintiff. Later the Plaintiff asked to amend this into a straight-forward additional $500,000 per year, increasing the total value of the contract to $7,500,000.00.

17.  Upon the contract getting underway, the Defendant began to perform.  The Plaintiff in fact paid the Defendant fully as to each installment due thereunder.  However, shortly after beginning the agreement, all good faith performance of the agreement ceased.

18.  As stated above, the entire essence of the agreement was the creation, marketing, promotion and sale of the Sarah Jessica Parker/Kat Florence Jewelry line, and the

establishment of a SJP/Kat Florence Jewelry partnership image and good will.  A substantial amount of work and expense went into the creation and ultimate sale of such a line.  The Defendant Parker agreed to be part of the process in exchange for a payment over time of $7,500,000.00.  Notwithstanding such agreement, she refused to properly participate and comply with her contractual obligations, making the success of this enterprise impossible.

19.   For example, one of the most significant aspects of introducing the line for sale is the initial launch.  The Defendant agreed, per the contract, to participate in the initial launch including making a personal appearance, promoting the brand, etc.  However, this participation did not occur.  On August 25, 2016 the Plaintiff sent an email to the Defendant requesting her attendance for the initial launch event.  This event was set for a red carpet evening event at the end of October, 2016 or early November, 2106, from 6 pm to 9 pm depending on the availability of the Defendant for an evening appearance.  The Defendant was notified that this was an evening event and advised her of the time commitment required.  This attendance was part of the obligations set forth in the endorsement agreement.  In order to properly prepare this cornerstone event and formal beginning of SJP/Kat Florence co-operation, the Plaintiff hired worldwide acclaimed Edelman PR company to manage the launch of the collection and store opening. This contract was a $1,000,000 expense, paid entirely by the Plaintiff.

20.   The event itself was very difficult to set up as it required months of planning including publicity, logistics, etc.  Based on the amount of time and money that was going into the event, the Plaintiff wanted to give the Defendant an ample amount of time to plan

ahead accordingly and make herself available to attend.

21.  The Defendant however, refused to timely respond whether she was or was not available.  She refused to timely advise that the date and time would not work for her and/or failed to timely advise as to alternative dates so that the event could be planned around her schedule.   It took her, through her assistants and agents, over three weeks just to get back with a date and time.

22.  Upon finally responding with a date for the most important event of the entire agreement, which took more then three weeks to do so, the Defendant stated that she was only available on one date, a Tuesday morning and afternoon, of October 25, 2016, from 10:00 A.M. to 4:00 P.M.  This date and time could not possibly work for the evening product launch that was being planned and was part of the contractual obligations.  Notwithstanding, the Defendant refused to provide any alternative evening times or dates. In fact, the Defendant was informed about the event format, a dinner event, since August 25, 2016 when Defendant's agent received Edelman's event planner, and her attendance offer for a lunch event only, i.e. from 10:00 A.M. to 4:00 P.M. was equivalent to a refusal to participate entirely in the dinner event.

23.  As a result of the Defendant's failure to attend the signature event, the event had to be cancelled as the launch of Sarah Jessica Parker D-Flawless Diamond collection without her attendance made no sense.

24.  In addition to the above, the Defendant additionally told the Plaintiff well after the agreement was entered into and after she received one or more of the initial payments, that she would not be available to do anything under the agreement for a period of five (5) months, i.e. November, 2016 through March, 2017 due to her new television show,

"Divorce."

25. In fact, in response to why she waited so long to even provide any date for the launch

her assistant responded as follows:

There are a lot of pending commitments surrounding the release of her new show
which is also in October, so she needs to be sure her schedule is free and clear before
she gives a definite answer on the below.

This response, which is similar to the position taken throughout this agreement

demonstrates that the contract in which she has been paid millions of dollars to

promote a new jewelry line is second compared to her acting career.  While it is

understandable that the Defendant may have additional commitments, if she was going

to accept a substantial sum of money and further understand that substantial

investment in time and money is being made due to her acceptance, she should further

understand that she needs to follow through on her commitments and treat them in

manner at least equal to her other professional activities.

26. Notwithstanding, the fact that she advised of her unavailability for a period of October,

2016 through March 2017 due to commitments to her show only after the contract was

entered into and after she was paid a portion of the fee, demonstrates a further

operation of bad faith.  The Defendant was well aware that the line needed to be

launched in time for the holiday season in November and December, 2016.  She

further knew that if it could not be, the Plaintiff would suffer substantial damages.

Yet, she announced not far from this time period that she was unavailable throughout

the entire holiday season and three months thereafter.  This action essentially

destroyed the viability of launching the line.

27. The Defendant additionally engaged in other actions that were contrary to the

obligations in the contract as well as her obligations of operating in good faith.  For example, she refused to attend other events claiming her scheduling was too hectic.  In addition, she refused to do interviews in relation to the jewelry line.  The interviews were not only part of her contractual obligations but represented a large piece of marketing and promotion.  The Plaintiff needed those interviews to use with the publicity company that it retained to promote the new line.

28.   Instead of doing the interviews, the Defendant simply claimed that it would be better for the Plaintiff if she promoted her own television show instead which would then indirectly assist the Plaintiff in promoting her line.  Putting aside whether that was true, which it was not, it was not for the Defendant to determine the marketing strategies of the Plaintiff on her own.  Furthermore, the interviews in question were not even supposed to be personal interviews but merely answers to a list of questions, via email. The failure to do the interviews caused a substantial loss of publicity.

29.   Finally, the Defendant refused to attend the opening of the London store to sell the new line.  The store opening was specifically part of the promotion strategy and set forth in the agreement.  The Defendant claimed that she was too busy to attend and could not leave New York and travel to London to be there in person for the opening.  However, the Plaintiff thereafter discovered that the Defendant Parker had in fact traveled to London, within the same interval of time,  and could have easily attended the store opening.  Yet, instead of attending an essential event of the co-operation with the Plaintiff, the Defendant engaged in activities to promote her line of perfume, a product unrelated to the Plaintiff.

30.   These types of actions by the Defendant have been commonplace throughout the

operation of the agreement.  The Plaintiff's business and the Defendant's contractual obligations have been secondary to other matters in her professional life.  There have been accounts on social media in regards to such actions to the extent that there is confusion as to whether the Defendant is even involved in the line and/or with the Plaintiff.  In fact, various customers of the Plaintiff even questioned whether the declared co-operation between Defendant Parker and the Plaintiff ever even existed.

31.   The Defendant has further failed to make any significant efforts to endorse the Plaintiff's products per the agreement.  She has refused to wear any of the jewelry outside of shooting for the catalogue.  The Plaintiff in fact offered to have her and/or her stylist engage in a custom design for her so that she would be comfortable wearing the jewelry.  Neither the Defendant, or even her stylist, would even return the Plaintiff's communications on this matter.  Jewelry was additionally sent to her by the Plaintiff to review and wear and the Plaintiff received no response.  The Defendant even refused to do the simplest of marketing and promotion such as follow the Plaintiff on Instagram, despite several specific requests to do so.  Such an effort would have taken a matter of seconds to complete.  Rather, Defendant endorsed, followed and/or supported on her social media postings several other companies, including jewelry competitors, rather supporting or posting anything in support of the Plaintiff's brand.

32.   In fact, there were fashion and jewelry events attended by both the Defendant and the Plaintiff's  principal in New York where the Defendant would not even acknowledge her, let alone make efforts to promote the brand. For example, at the 2017 Golden Globes red carpet event the Plaintiff was supposed to present the jewelry line from

"Sarah Jessica Parker."  The Defendant Parker in fact separately attended the event. Yet despite the line being featured at the event, and both the Plaintiff and the Defendant being there, the Defendant inexplicably failed to speak with, recognize or take a single photo with the President of the Plaintiff or any member of the company. She in fact made no effort to even acknowledge that she had any relationship to the brand, despite the fact that her name was on it and she was being paid to promote the brand as part of the contract.

33.   In addition to the above, in March, 2016 the Defendant attended a photo shoot as part of her obligations under the agreement.  At the photoshoot the Plaintiff gave her certain pieces of jewelry to wear during the photo shoot.   This jewelry had a value of almost $150,000.00.  After the photo shoot was over, the Defendant asked if she could personally borrow several pieces of the jewelry to wear for a few months and then return all the pieces thereafter.

34.   The Plaintiff agreed with the understanding that they would be returned to the Plaintiff thereafter.  Pursuant to an email dated March 29, 2016 the Plaintiff confirmed that the Defendant Parker and her assistant on her behalf has maintained the jewelry in their possession.  It further provided a list of the jewelry that Ms. Parker was permitted to keep for a period of time, pictures of the same, and the value.

35.   In response to the email, on March 29, 2016 Alyssa Amino, the assistant to Ms. Parker, confirmed in writing that they were in receipt of the list and that Ms. Parker had the high value jewelry in her possession.  A copy of this email exchange is attached hereto.

36.   The Plaintiffs jewelry that Ms. Parker was permitted to wear for two months and was

in her possession is described as the following:

| KFD015 | Necklace | 2016 | 1.00 | SJP | $ | 7,963.40 |
| KFD060 | Earrings | 2016 | 1.00 | SJP | $ | 7,574.80 |
| KFD068 | Ring | 2016 | 1.00 | SJP | $ | 10,930.68 |
| KFD057 | Necklace | 2016 | 1.00 | SJP | $ | 7,603.80 |
| KFD087 | Ring | 2016 | 1.00 | SJP | $ | 18,923.08 |
| KFD035 | Earrings | 2016 | 1.00 | SJP | $ | 12,615.00 |
| KFD050 | Ring | 2016 | 1.00 | SJP | $ | 16,069.48 |
| KF644 | Ring | 2016 | 1.00 | SJP | $ | 27,115.00 |
| KF514 | Earrings | 2016 | 1.00 | SJP | $ | 40,706.72 |
| | | | 9.00 | | $ | 149,501.96 |

A spreadsheet of the jewelry and pictures related thereto is attached to the Amended Complaint.

37.  However, after two months Ms. Parker never returned the jewelry to the Plaintiff. Upon information and belief, the Defendant kept the jewelry.

38.  To date, Ms. Parker having received and maintained the jewelry as described above in her possession has failed to compensate the Plaintiff for the same.

39.  As a direct and proximate result of all of the above described actions, the Plaintiff has suffered substantial damages.  Specifically, the Plaintiff spent millions of dollars in the purchase of certain diamonds, sponsorship, opening up a London store, publicity, and other expenses in anticipation of launching the Sarah Jessica Parker line.   As a result of the Defendant's  actions, the line was never launched.  The Plaintiff additionally had to close the London store because of lack of a viable product.  The Plaintiff also has diamonds that cannot be used as part of the line in its inventory that were purchased specifically for this reason.  The line, at this time, has in fact for all practical purposes, been damaged beyond repair.  Finally, the Plaintiff has lost the value of the

pieces of jewelry that the Defendant has and/or had in her possession, pieces that were supposed to be returned accordingly.

### Count I
### Breach of Endorsement Contract
### Sarah Jessica Parker and Tandu Productions

The Plaintiff realleges and reavers paragraphs one through thirty-nine as though fully set forth herein.

40. As stated above, the Plaintiff and the Defendants entered into an endorsement contract which required the Defendants to perform certain marketing activities for the promotion of the new jewelry line between the Plaintiff and the Defendant Parker. The specific obligations are set forth in the agreement.

41. The Defendants Parker and Tandu breached the agreement as follows:

A. The Defendant failed to provide one personal appearance, of up to two (2) consecutive hours in a major European capital city in connection with the opening of Kat Florence's stand-alone flagship store in violation of paragraph 1(i)(c) of the agreement.

B. The Defendant failed to provide a personal interview during which SJP was required to describe her feelings about the Kat Florence brand and about wearing Kat Florence's jewelry Products in violation of paragraph 1(i)(d) of the agreement.

C. Each calendar year of the agreement, the Defendant failed to provide two production shoots of up to three consecutive days wearing Kat Florence jewelry.

D. The Defendant failed properly and/or adequately mention during interviews and/or other professional engagements that she likes Kat Florence Jewelry in violation of paragraph 1(i)(g) of the agreement.

E. The Defendant failed to use good faith efforts, energies and abilities with regard to the services set forth in the agreement. She further failed to follow in good faith the reasonable instructions and/or directions of the Plaintiff in relation to the jewelry line including but not limited to the failure to utilize social media in any significant way to promote the brand in relation to the services set forth herein, in violation of paragraph 1(i)(h) of the agreement.

42.     The Defendants have additionally breached the agreement by refusing to participate in the marketing and promotion of the brand for a period of five months claiming that her television show commitments were more important then her obligations under the attached agreement.

43.     The Defendants have further breached the agreement by failing to make any good faith efforts and/or providing adequate energies with regard to the services rendered.

44.     As a direct and proximate result of the breach by the Defendants, the Plaintiff has suffered damages including those amounts expended in contemplation of the agreement and creating a line of jewelry with the Defendants.   Alternatively, the Plaintiff has suffered damages in the amount of monies that it has paid the Defendants to date, for services that were never provided.   Finally, and alternatively, the Plaintiff has suffered damages in the lost profits it would have made had the Defendant fully complied with her obligations under the agreement.

45.     The Plaintiff has satisfied all conditions precedent and/or such conditions have been waived.

46.     The Plaintiff has provided notice in writing on several occasions to the Defendants that they have failed to comply with the obligations under the agreement   . Notwithstanding such notice and opportunity to cure, the Defendants have failed to do so.

47.     The Plaintiff has been required to retain the undersigned counsel and has incurred attorneys fees related to the prosecution of this action.   Paragraph 20 of the agreement attached hereto permits the prevailing party to recover their attorneys fees and costs. The Plaintiff thus demands the same in addition to the damages that it suffered as

described herein.

WHEREFORE, the Plaintiff respectfully requests that this court grant judgment in its favor and against the Defendants Parker and Tandu for damages as more fully described above, award the costs and attorneys fees related thereto, and for any additional relief this court deems just and proper.

### Count II
### Negligent Misrepresentation
### Sarah Jessica Parker and Tandu Productions

The Plaintiff realleges and reavers paragraphs one through thirty-nine as though fully set forth herein.

48.   As stated above, the Plaintiff and the Defendants negotiated an agreement whereby the Defendants agreed to commit in part Parker's  time and attention to the endorsement of a line of jewelry that would bear her name and/or her likeness.

49.   The Defendants represented to the Plaintiff that they had in fact the time and availability to engage in the activities as required by the contract.

50.   The Plaintiff relied on such representations in entering into an agreement with the Defendants and agreeing to pay $5,000,000 for the promotion of the new line of jewelry.  Such reliance was reasonable and justifiable under the circumstances such that there was no indication that any other activities of the Defendants would materially interfere with the obligations of the endorsement agreement.

51.   However, after the contract was entered into, the Defendants advised the Plaintiff that the Defendant Parker was unavailable to provide any marketing services or promotion services, including attending the initial product launch and/or any store openings, for a period of five months, i.e. from November, 2016 through March, 2017.  This period

was essential for the launch of the product as it was at or near the holiday sales season.

52.   The Plaintiff relied to its detriment on the Defendant Parker to be available during this time frame and spent millions of dollars in building the line, buying and designing merchandise, opening up a physical location, and obtaining marketing and publicity related thereto.  The failure of the Defendants to participate during this time period has resulted in the loss of the line, the loss of the London store, the loss of goodwill and has severely damaged the reputation of the Plaintiff.

53.   It was only after the contract was entered into and the Plaintiff spent such monies did the Defendants advise the Plaintiff that Defendant Parker was unavailable for the most important months of the year due to her obligations to her television show, "Divorce" and other professional commitments.

54.   The Defendants were negligent to the extent that they misrepresented their time and availability in relation to the performing the promotion activities.  They negligently omitted the fact that the Defendant Parker had alternative commitments that would prevent her from being able to perform the agreement.

55.   As a direct and proximate result of the actions of the Defendants, the Plaintiff has suffered damages including but not limited to the amount of monies expended in anticipation of the Sarah Jessica Parker line, loss of reputation, and additional compensatory damages related to the actions of the Defendants.

WHEREFORE, the Plaintiff respectfully requests that this court grant judgment in its favor and against the Defendants Parker and Tandu for damages as more fully described above, award the costs of this matter, and for any additional relief this court deems just and proper.

**Count III**
**Unjust Enrichment**
**Sarah Jessica Parker**

The Plaintiff realleges and reavers paragraphs one through thirty-nine as though fully set forth herein.

56.   As stated above, after a photo shoot in March, 2016 the Defendant asked if she could keep certain pieces of the Plaintiff's jewelry that she wore at the photo shoot for a period of a few months to wear for her personal purposes.  This request was outside any provisions of the endorsement agreement as it was being made for the Defendant's personal purposes.

57.   The Plaintiff agreed and permitted the Defendant to maintain the jewelry in her possession.  Due to the high value of the jewelry, the Plaintiff provided the Defendant with a confirmation in writing with the details of the various nine  (9) pieces of jewelry that the Defendant was keeping for a period of time.  The Defendant confirmed receipt of the confirmation and further confirmed that she had possession of the jewelry. The list of the jewelry is attached hereto and incorporated herein.

58.   However, notwithstanding that the Defendant was only supposed to wear the jewelry for a few months and return the same to the Plaintiff thereafter, she failed to do so. The value of the jewelry at the time of providing it to the Defendant in total was almost $150,000.00.

59.   Upon information and belief the Defendant Ms. Parker maintains the jewelry in her possession to this date.  It has been over two years since she was market given the jewelry and she has failed to return it and/or failed to pay the Plaintiff the proper value, a value with interest, that would exceed $150,000.00.

60.   The Defendant Parker was thus enriched at the Plaintiff's expense.

61.   Equity and good conscious militate against permitting the Defendant Parker to retain this valuable jewelry without paying the Plaintiff an equivalent amount related thereto.

62.   As a result, the Plaintiff hereby seeks restitution from the Defendant Parker in an amount equivalent to value of the nine pieces of jewelry that was given to the Plaintiff as set forth herein.

WHEREFORE, the Plaintiff respectfully requests that this court grant judgment in its favor and against the Defendant Parker for the amount as more fully described above, award the costs of this matter, and for any additional relief this court deems just and proper.


The Plaintiff demands trial by jury of all counts as described above

DOWNS LAW GROUP, P.A.
3250 Mary St. Suite 307
Miami, Florida 33133
Telephone No.: (305) 444-8226
Facsimile No.: (305)444-6773
Jfriedman@dbwlaw.com

s/ Jeremy D. Friedman

_____
Jeremy D. Friedman, Esq.
Florida Bar No.: 134643

Execution Copy

# ENDORSMENT AGREEMENT

This ENDORSEMENT AGREEMENT (the "Agreement"), is made to be effective as of October 9, 2015 ("Effective date"), by and between:

**Kat Florence Design Limited**, a company with its registered office located at Maria House, 1 Avolonos Street, Nicosia, 1075, Republic of Cyprus, (the "Kat Florence") and,

**Tandu Productions, Inc.,** ("Lender") f/s/o Sarah Jessica Parker ("SJP") a New York Corporation located at 200 Park Avenue South, 8th Floor, New York, NY 10003, United States of America

Kat Florence, Lender and SJP may be referred to herein individually as a "Party" or collectively, as the "Parties".

## WITNESSETH

**WHEREAS**, Kat Florence is an internationally recognized brand and trademark, offering high quality and custom design luxury jewelry (the "Products");

**WHEREAS**, the Lender has the right to lend the services of **Sarah Jessica Parker**;

**WHEREAS**, Sarah Jessica Parker, is recognized and known through the world as an accomplished actress and fashion icon;

**WHEREAS**, Kat Florence desires to acquire, under the terms and conditions set forth in this Agreement, and Lender and SJP desire to grant the right and license to utilize SJP's name, nickname, voice, likeness, autograph, photograph and biographical information, in each case as approved by SJP (collectively "Name and Likeness"), in connection with the advertisement, promotion and sales of the Kat Florence Products in various forms of approved media (collectively "Advertising");

**WHEREAS**, During the Term (as defined below) Kat Florence will start one (1) special line of high-end jewelry made of D color flawless Diamonds, and other rare and exquisite gem types (the "SJP/Kat Florence Line") (the name of such Line to be agreed by the Parties at a later date); and

**WHEREAS**, During the Term, Kat Florence will start at least three (3) high-end stand-alone shops in major European capitals (London, Rome, Berlin, etc.) where the SJP/Kat Florence Line products will be displayed and sold;

**NOW THEREFORE**, in consideration of the mutual promises and covenants set forth herein and for other good and valuable consideration, the Parties, intending to be legally bound, agree as follows:

1.      License.  Lender hereby, for good and valuable consideration hereby agreed, grants to Kat Florence the right and license to use and exploit and authorize others to use and exploit, during the Term and throughout the world, SJP's Name and Likeness to promote the Products in Advertising on the terms set forth in this Agreement and in accordance with the applicable terms and conditions hereby specified, (the "License"). Further, Kat Florence acknowledges that SJP has agreements in

place with third parties pursuant to which Lender or SJP has licensed such third party the right to use the Name and Likeness of SJP. For this and other reasons, it is of the essence of this Agreement that Kat Florence use the Name and Likeness of SJP in no other way except as explicitly stated and permitted in this Agreement.

In furtherance of the License, Lender hereby grants to Kat Florence the right and license, during the Term, to use the approved photos, approved videos and approved recordings generated as a result of SJP's performance of Services, as they are defined below, as approved in writing by SJP in each instance:

(i)     Services.   Lender and SJP agree that SJP shall render the following services (the "Services") during the Term:

(a)     A one (1)-day photo shoot (the "Collection Photo Shoot"), during which SJP shall wear Kat Florence mutually approved jewelry Products; the Collection Photo Shoot shall take place in New York, on October 9, 2015, at Daylight Studio in New York City. Peter Lindbergh will be the photographer.

(b)     One (1) personal appearance at CAA's New York office, on October 8, 2015 lasting up to 1 and ½ (1.5) consecutive hours, during which SJP and Kat Florence's designer Kristy Ann Florence will announce (in a mutually agreed-upon manner) the co-operation between Parties (the "Handshake Event").

(c)     One (1) personal appearance, of up to two (2) consecutive hours, currently contemplated to be in Spring 2016, in one major European capital city (i.e., London, Rome, Berlin) in connection with the opening of Kat Florence's stand-alone flagship store (the "Flagship Store Opening").

(d)     One (1) personal interview during which SJP shall describe her feelings about the Kat Florence brand and about wearing Kat Florence's jewelry Products; The interview can be done at SJP's election by telephone or means of written questions and answers (up to ten (10) questions, and to be provided in advance for SJP's written approval), and does not require SJP's personal presence. SJP shall have written approval over the final interview, and any excerpts thereof, prior to any use or dissemination. The results of such interview will be used in a mutually agreed upon manner in accordance with the terms and conditions set forth by this Agreement.

(e)     Each calendar year, SJP shall render services for up to two (2) production shoots of up to three (3) consecutive days, in New York City each where SJP will wear Kat Florence Products. Kat Florence will use photos and video materials resulting from the shooting days for its Products promotion in Advertising, according with the terms and conditions set forth by this Agreement. Parties will agree on the details of shooting schedule and materials to be captured each year ("Yearly Production Appearance").

(f)     During the Term, at least one (1) personal appearance, of up to one and a half (1.5) consecutive hours, in one major European capital city (i.e., London, Rome, Berlin) in

2



connection with the opening of Kat Florence's stand-alone flagship stores and at least one (1) personal appearance, of up to one and a half (1.5) consecutive hours, in one of Kat Florence's stand-alone flagship stores in connection with the launch of SJP/Kat Florence Line (the "Personal Appearances").

    (g)    SJP shall mention, when appropriate (in SJP's sole discretion) during interviews and/or other professional engagements, that she likes Kat Florence jewelry;

    (h)    SJP shall use good faith efforts, energies and abilities with regard to the Services to be rendered. SJP shall render all services in a professional manner and will consider in good faith the reasonable instructions and directions of Kat Florence, as long as such instructions and directions do not interfere with SJP's other possible professional engagements or personal preferences or beliefs;

    (i)    In addition to the foregoing, SJP may, at her sole discretion, make personal visits to any Kat Florence Flagship stores for purposes of visiting or for any other substantially similar publicity-related activities, and SJP and Kat Florence shall mutually agree on travel, accommodations and other expenses to be provided in connection therewith;

    (j)    There shall be no press in attendance on any of SJP's service days without her written consent in advance. Additionally, there shall be no behind-the-scenes filming during the rendition of any services by SJP without her written consent prior to the service day. If SJP agrees to behind-the-scenes filming, there will no filming until she is camera ready and gives her verbal consent thereto, filming will stop upon request and there will no filming while eating or during breaks. For the avoidance of doubt, SJP will have written approval over any such footage prior to use.

    (k)    With respect to any interviews in which SJP participates, SJP shall have written approval over the media outlet and interviewer, and all questions will be provided in advance for written approval. All such interviews shall be conducted in the English language. Additionally, there shall be no cover photos or stories without SJP's prior written approval.

Additional terms and conditions related to the Services are set forth in the Standard Terms and Conditions ("Terms and Conditions") as presented on Appendix A.

    (ii)    <u>Usage</u>.   In advance of each calendar year of the Term, Kat Florence and SJP will mutually agree upon a work schedule for Personal Appearances and Services rendered for the upcoming year, including, without limitation, the types of Advertising materials, the number of executions, the text, key messages and Services that may be required in connection therewith. Without limiting the approvals otherwise provided herein to Lender and SJP, the Parties agree as follows:

    (a)    With respect to any use of SJP's Name and Likeness or Advertising on the internet, the Parties agree there will be no pop-ups, pop-unders or page takeovers. All such use will be in streaming, non-downloadable form, and any videos will be click-to-play and will not appear as pre-roll. There will be no use in e-mail blasts.

3



(b)     With respect to point-of-sale use of SJP's Name and Likeness or Advertising, such uses may be in Kat Florence stand-alone stores only, mat and there will be no life sized cut-outs or standees, no use in window displays and no use on shopping bags.

(c)     Materials containing in any way SJP's Name and Likeness will not appear in any tabloid publications or publications reasonably considered by SJP to be offensive to the general public (including such print publications and on the internet), and no print Advertising or other materials related to the relationship between SJP and Kat Florence will appear in entertainment publications or websites.  Additionally, there will be no use of Advertising or SJP's Name and Likeness in other third-party works or in connection with mass sales/discounts that may lead the public opinion to believe that SJP is related with low-quality/consumer oriented discount activities, tie-ins or co-promotions without SJP's written approval.  The Parties further agree that the following uses are not permitted without SJP's written approval in advance in each instance: in-cinema, outdoor/out-of-home (e.g., billboards, bus shelters, kiosks, airport materials), banner ads on the internet, catalogues (Christie's, Sotheby's, Tiancheng and high-end auction catalogues are preapproved) or mailers.  Advertising will not include prices of any items or reference to sales or discounts.  There will be no use of SJP's Name or Likeness on any products, tags or packaging without her written approval.

(d)     Kat Florence shall contractually prohibit any photographer or videographer from using any images or video of SJP without her written consent.  Additionally, Kat Florence will restrict the use of any unapproved photography or video during the rendition of SJP's Services, including but not limited to the use of cell phone cameras.

(iii)  <u>SJP/Kat Florence Line</u>.  Kat Florence will design and manufacture a high-end, high-quality SJP/Kat Florence Line, and SJP will have written approval over the final pieces.  Any commercial tie-ins or co-packaging with other products, brands or services will be subject to SJP's written approval. As of the expiration or earlier termination of this Agreement, there will be no further manufacturing, promotion, distribution, sale or other exploitation of the SJP/Kat Florence Line and neither party shall have the right to use the name of such line.

2.     <u>Term of Agreement</u>. The term of this Agreement shall be five (5) consecutive years commencing on the Effective Date and ending on October 8, 2020 (the "Term"). Notwithstanding this, upon the expiration or earlier termination of this Agreement, Kat Florence shall be automatically granted, without any action or additional consideration, a thirty (30) day grace period (the "Grace Period") within which to take down, remove and recall all existing uses of SJP's Name and Likeness and Advertising; provided that there shall be no new uses after expiration or earlier termination of the Term and that Kat Florence will use reasonable good faith efforts to stop third-party use after the Term.

3.     <u>Consideration.</u>  As good and valuable consideration for the license to use SJP's Name and Likeness and for SJP's Services and for Lender's other covenants and obligations hereunder, Kat Florence shall pay to Lender, on a pay-or-play guaranteed basis, as follows:

(i) Fixed payments of five million dollars (USD$5,000,000) (the "Guaranteed Flat Fee") as follows:

4



(a)     With respect to the 2015 calendar year, a total of two hundred fifty thousand dollars (USD $250,000), to be paid no later than October 10, 2015; provided that Kat Florence shall have no right to use SJP's Name and Likeness or any materials created hereunder until such amount has been received by Lender;

(b)     With respect to the 2016 calendar year, a total of one million dollars (USD $1,000,000) shall be paid as follows: in four quarterly installments of two hundred fifty thousand dollars (USD$250,000) each, to be paid on January 1, 2016, April 1, 2016, July 1, 2016 and October 1, 2016;

(c)     With respect to the 2017 calendar year, a total of one million dollars (USD $1,000,000) shall be paid as follows: in four quarterly installments of two hundred fifty thousand dollars (USD$250,000) each, to be paid on January 1, 2017, April 1, 2017, July 1, 2017 and October 1, 2017;

(d)     With respect to the 2018 calendar year, a total of one million dollars (USD $1,000,000) shall be paid as follows: in four quarterly installments of two hundred fifty thousand dollars (USD$250,000) each, to be paid on January 1, 2018, April 1, 2018, July 1, 2018 and October 1, 2018;

(e)     With respect to the 2019 calendar year, a total of one million dollars (USD $1,000,000) shall be paid as follows: in four quarterly installments of two hundred fifty thousand dollars (USD$250,000) each, to be paid on January 1, 2019, April 1, 2019, July 1, 2019 and October 1, 2019;

(f)     With respect to the 2020 calendar year, a total seven hundred and fifty thousand dollars (USD$750,000), shall be paid as follows: in three quarterly installments of two hundred fifty thousand dollars (USD$250,000) each, to be paid on January 1, 2020, April 1, 2020 and July 1, 2020;

(ii) Starting on January 1, 2016 and ending on December 31, 2020, an additional commission of 10% of 100% of Kat Florence Company Profit (as defined below) (the "SJP Profit Share"). Notwithstanding this, in case the SJP Profit Share will be less than five hundred thousand dollars (USD$500,000) in any calendar year, Kat Florence will guarantee a minimum of five hundred thousand dollars (USD$500,000) ("Guaranteed Additional Commission") per calendar year (the SJP Profit Share inclusive of the Guaranteed Additional Commission together with the Guaranteed Flat Fee, shall be the "Consideration") payable on a pay-or-play guaranteed basis, to be paid each year, in an aggregate total Guaranteed Additional Commission of two million five hundred thousand dollars (USD$2,500,000), for the Term of this Agreement. Prior to each fiscal year (i.e., 2016, 2017, 2018, 2019 and 2020), five hundred thousand dollars (USD$500,000) shall be placed into escrow in accordance with the wire instructions below by no later than December 1 of the prior calendar year and shall be released in two (2) installments of two hundred fifty thousand dollars (USD$250,000) each, on April 1 of such calendar year and on August 1 of such calendar year.

5



(iii)  Any SJP Profit Share in excess of the Guaranteed Additional Commission already paid for that calendar year will be paid to Lender within ninety (90) days following Kat Florence yearly financial statements' closure (i.e., within ninety (90) days after November 1).

(iv)  Kat Florence Company Profit shall be defined as all income received by or credited to Kat Florence and/or its affiliates minus actual, out-of-pocket, unaffiliated third-party expenses solely in connection with the Kat Florence business for manufacturing, advertising and distributing the Products, and Kat Florence hereby undertakes to provide Lender and/or SJP with full access to its financial statements, books and accounts starting with the financial year 2016. For the avoidance of doubt, SJP shall have customary audit and accounting rights in connection with her participation in Kat Florence Company Profit.

(v)  Kat Florence herby undertakes and agrees that all its financial statements and accounts will be fully transparent and in compliance with IFRS (International Financial Reporting Standards), and that simultaneously with payments to Lender under subparagraph 3(iii) above, it will provide to SJP an accounting statement that sets forth in detail the calculations to account for such SJP Profit Share and the Kat Florence Company Profit.

(vi)  Payment shall be made from Kat Florence's account to CAA's account, by international wire transfer (SWIFT) and parties agree that their bank details are as follows:

Kat Florence Design Limited
USD A/C NO.: 357020088457
IBAN NO.: CY21002001950000357020088457
Bank of Cyprus Ltd
International Business Unit, Nicosia
P.O. Box 21472
CY-1599 Nicosia
Cyprus
Swift Address: BCYPCY2N


Tandu Productions, Inc.

City National Bank
400 North Roxbury Drive, 4th Floor
Beverly Hills, CA 90210
Contact: Mariam Zakian
Telephone: (310) 888-6186
Bank Routing No.: 122-016-066
Credit Account: Creative Artist Agency Client Trust Account
Account No.: 101-797-791
Loan-out: Tandu Productions, Inc.
Client: Sarah Jessica Parker
Reference: "Kat Florence Jewelry"

Kat Florence's failure to fulfil its obligation on fixed payments will trigger immediate cancellation of the License to use the Name and Likeness of SJP and the termination of this Agreement. For avoidance of doubt, failure to fulfil payment obligations means that Kat Florence fails to provide consideration due pursuant to this Agreement, within ten (10) days following the date such consideration is due hereunder, provided that Kat Florence is notified by SJP in writing of such non-payment and such payment by Kat Florence is not made within three (3) days following such notification.

(vii)   The Lender hereby agrees that the Consideration agreed herein represents the full and mutually       agreed consideration for SJP's Services and the rights herein granted.

(viii)   All other fees and possible expenses are not included in the Consideration and shall be settled separately by Kat Florence (e.g., travel expenses, professional fees, location expenses, etc.).

(ix)   Each Party is liable for its own taxes and duties that may rise under this Agreement; provided that Kat Florence will pay VAT taxes, if any.

(x)   Any additional use or license extension to the terms specified herein shall be subject to mutual written agreement by the Parties and separate negotiation with the Lender for an additional fee for said additional use or license and any additional terms and conditions, and if such terms are agreed, the parties shall amend the Agreement accordingly.

4.   <u>Travel and Expenses</u>. Kat Florence agrees to provide and pay for the travel and expenses related to SJP's services provided under this Agreement, all in accordance with SJP's precedent, including hiring SJP's designated styling and glam team (hair, make-up and wardrobe stylists and manicurist). Kat Florence will negotiate fees and expenses (including travel) for SJP's designated styling and glam team directly with their respective representatives, it being agreed that such stylists will stay at the same hotel as SJP when traveling.

(i)   For any travel outside of New York City (each such location, a "Distant Location"), Kat Florence will provide, at a minimum, the following:

      (a)   first-class, round-trip airfare for SJP and two (2) guests;

      (b)   first-class exclusive ground transportation, with an approved car service and drivers, for SJP and her guests to and from all airports, hotels/residences and service locations and available on a 24-hour basis while at a Distant Location;

      (c)   first-class hotel accommodations (1-bedroom suite for SJP and 2 standard rooms for her guests on the same floor as SJP's suite) at a hotel approved by SJP, including the room rate, WiFi and reasonable incidentals;

      (d)   VIP greeters at all airports;

      (e)   a per diem of $200 per day (including travel days) for SJP and $100 per day for each of SJP's guests for miscellaneous daily expenses.

7



(ii)  Kat Florence will book flights according to SJP-approved times and dates and on SJP-approved airlines. Additionally, when traveling internationally, Kat Florence will: (a) upon SJP's request, provide an approved translator on a 24-hour basis, (b) upon SJP's request, provide cell phone(s), and (c) assist in obtaining visas and pay costs for visas and any vaccinations for SJP and her guests.

(iii)  Furthermore, Kat Florence will provide security reasonably approved by SJP in connection with all services.

(iv)  For any travel in New York City, Kat Florence will provide SJP with first-class exclusive ground transportation, with an approved car service and driver.

(v)  If SJP is wearing Kat Florence Products in connection with any services under this Agreement or at any professional events, Kat Florence, at its sole cost and expense, will be solely responsible for arranging security and property insurance for all such Kat Florence Products.

(vi)  No Services shall be required on travel days, and if she elects, SJP will be entitled to a 24-hour rest period after international travel prior to rendering Services.

(vii)  During all service days (other than the Handshake Event day), Kat Florence also will provide a first-class stand-alone trailer or dressing room with first-class amenities including Wi-Fi and a private bathroom for SJP's exclusive use and a separate first-class stand-alone trailer or dressing room with first-class amenities for SJP's hair, makeup and wardrobe.

5.    <u>Union Dues and Fees</u>. Should any services rendered by SJP or materials created hereunder fall under the jurisdiction of SAG-AFTRA or other applicable union, Kat Florence will engage a bona fide union signatory and will make any required pension, health and welfare payments to such union. For the avoidance of doubt, SJP shall be responsible for paying any yearly union dues associated with her membership in any such union.

6.    <u>Exclusivity</u>.  Lender represents and warrants that during the Term of this Agreement, SJP will not make any paid advertisements on behalf of any other competitor, <u>i.e.</u>, high-end, luxury, custom jewelry brands (which, for the avoidance of doubt, shall not include watches or watch brands) ("Competitors"). Notwithstanding this, SJP shall be entitled to freely wear or use any jewelry or similar products, at her sole choice, as long as they are not part of a paid advertisement campaign for a Competitor. SJP shall be allowed to wear whatever jewelry she wants in her professional and personal life and is allowed to do deals with other jewelry companies to wear their product on red carpets, events, film premieres, award shows, etc. The images and footage generated from those events will be for these other companies PR purposes and it is acknowledged that such images or footage of such appearances may be freely distributed by any means of media. For the avoidance of doubt, nothing shall preclude SJP from (a) appearing at any events, regardless of sponsorship, (b) appearing in any form of entertainment program, however characterized, news or information portion of any program, motion picture, television, radio or other program regardless of sponsorship or use of competing products therein, or (c) rendering services or granting rights in connection with any merchandising, commercial tie-in and/or product placement in or for any of the engagements listed in clause (b) above.



7.    Review, Approval, and Ownership of Advertising.  All Kat Florence permitted materials created hereunder shall be subject to prior written approval of SJP or SJP's designated representative.  All materials for approval will be submitted to Peter Hess at CAA, Ina Treciokas and SJP's assistant (the "SJP Representatives").  Said written approval must be given within five (5) business days of SJP Representatives' receipt or said usage shall be deemed disapproved.  For the avoidance of doubt, the final edited versions of all materials produced hereunder will not deviate from the SJP-approved materials.  All usages by Kat Florence shall be consistent with the approvals given by SJP at that time.

Additionally, and for the avoidance of doubt, SJP shall have written approval over: (a) all materials to be published, including without limitation, all Advertising, still photographs (including screen grabs), layouts, non-photo likenesses and copy, retouching or modifications, (b) any scripted remarks and the use of any statements made by or attributed to SJP, (c) any publicity materials released by Kat Florence using SJP's Name and Likeness, (d) the inclusion of any other models, celebrities or co-stars in any materials created hereunder, (e) any other celebrity spokesperson for Kat Florence during the Term, (f) all media outlets in attendance at events or appearances made by SJP hereunder and/or to which Kat Florence provides materials created hereunder, (g) any director, photographer or videographer engaged in connection with SJP's services hereunder, (h) all services rendered by SJP (the Collection Photo Shoot day, Handshake Event day and Flagship Store Opening day as provided herein are pre-approved, provided that the specific services and the itinerary for such days will be mutually agreed upon in advance); and (i) her hair, make-up and wardrobe "looks" in connection with all Services (including all clothing, shoes and accessories [including the Kat Florence jewelry pieces worn, if any]).

Any such usage featuring SJP in the Advertising and/or press releases shall be and remain the property of Kat Florence; however, Kat Florence shall have the right to use said Advertising and/or press releases solely as outlined in this Agreement and only during the Term. SJP may use said materials in whole or in part solely for the purpose of presenting SJP"s work in SJP's personal portfolio, website or otherwise and/or on SJP's Representatives' websites. Such usage may not be sold or transferred.

Kat Florence shall obtain all approvals, agreements and consents to which SJP is entitled under this Agreement in writing (email is permitted).

8.    Termination.

     (i)    Kat Florence may terminate this Agreement immediately upon written notice to Lender, in the event of the following: (a) SJP is convicted of any felony involving moral turpitude; (b) SJP commits an act of fraud which brings SJP into substantial scandal or contempt in such manner as to materially reduce the commercial value of SJP's Name and Likeness; (c) Lender or SJP materially breaches this Agreement, and, after written notice thereof and a twenty (20) day period to cure, Lender or SJP, as the case may be, have not cured the foregoing; (d) Incapacity (as defined in Appendix A) of SJP for at least two hundred fifty (250) consecutive days. If this Agreement is terminated pursuant to this Paragraph 8(i), then Kat Florence shall have no further obligation to SJP or Lender, except as otherwise provided herein and except for the payment of any earned and accrued, but unpaid compensation. Furthermore, Lender agrees that such termination pursuant to Paragraph 8(i) (a), (b), (c) and (d) shall not void the License granted on Paragraph (1) and Kat Florence will still have the right to use the License, the Name and the Likness of SJP for the full period of the Term. Kat Florence shall not have waived any of its rights at law or in equity by exercising any provisions of this paragraph.

9

(ii)     Lender shall have the right to terminate this Agreement upon ten (10) days prior written notice to Kat Florence in the event of the occurrence of any of the following: (a) Kat Florence becomes insolvent, unable to pay its debts or declares bankruptcy; or (b) Kat Florence fails to provide consideration due pursuant to this Agreement, within ten (10) days following the date such consideration is due hereunder, provided that Kat Florence is notified by SJP in writing of such non-payment and such payment by Kat Florence is not made within three (3) days following such notification; or (c) Kat Florence fails to comply with or breaches any covenant or agreement set forth herein and fails to cure same (if curable) within seven (90) days of receipt of written notice, or (d) if an action or event involving Kat Florence (including any officer or executive thereof) or any other products or services of Kat Florence materially harmed or is reasonably likely to materially harm Lender and SJP, or is materially inconsistent with the reputation or image of Lender or SJP. Furthermore, Kat Florence agrees that such termination pursuant to Paragraph (8)(ii) (a), (b) or (c) shall not relieve it of its obligations to provide consideration as contemplated hereunder (i.e., the Guaranteed Flat Fee and the Guaranteed Additional Commission).  Lender shall not have waived any of its rights at law or in equity by exercising any provision of this paragraph.

(iii) In case of this Agreement expiring or being terminated pursuant to Paragraph 8(i) or Paragraph 8(ii) above, Kat Florence's rights to the use of SJP's Name and Likeness shall end, according to Paragraph 2 of this Agreement, and there will be no further marketing, promotion, advertising, distribution or sale of the SJP/Kat Florence Line or the products therein.

9.     Notices. All notices provided for herein shall be given in writing by hand delivery, courier service, or by certified mail return receipt requested to the addresses of the parties set forth as follows (unless change of address by notice to the other party is given as provided in this Paragraph 9):

**If to Lender/SJP:**
c/o Peter Hess
Creative Artists Agency
405 Lexington Avenue, 19th Floor
New York, NY 10174

**If to Kat Florence**
Kat Florence Design Limited
Maria    House,    1    Avolonos    Street,
Nicosia 1075, Republic of Cyprus

With a copy to:
Schreck Rose Dapello & Adams LLP
5 Columbus Circle, 20th Floor
New York, NY  10019
Attn.: Ira Schreck, Esq. and Julie Feldman, Esq.

And a copy of all payments and accounting statements to:
Altman, Greenfield & Selvaggi LLP
200 Park Avenue South, 8th Floor
New York, New York 10003
Attn: Frank Selvaggi

10

10.     Representations and Warranties of Kat Florence. Lender and SJP rely upon Kat Florence's skill and judgment and also upon the following representations of Kat Florence, which shall be in effect during and after the term of this Agreement:

(i) Kat Florence's products will be merchantable and fit for the purpose for which they are intended, and

(ii) Kat Florence's products and services, and the sourcing, manufacture, distribution, packaging, promotion, advertising and labels associated therewith will conform at all times to all applicable federal, state and local laws, rules, regulations, ordinances, and other enactments and industry standards and best practices, including, but not limited to, those relating to product safety;

(iii) Without limiting the generality of Paragraph 10(ii) above, all diamonds, stones and other materials in Kat Florence's products have been and shall be "conflict-free";

(iv)   The contents and workmanship of Kat Florence's products and Advertising will be consistent with industry standards and best practices and of the highest quality.

11.     Indemnity. Kat Florence shall be solely responsible for all liability arising out of production, distribution, advertising, promotion, exploitation and sale of its products. Kat Florence hereby agrees to indemnify, defend and hold harmless the Lender and SJP, their heirs, agents, representatives and employees (referred to collectively as "SJP Indemnities") from and against any and all claims, actions, causes of action, damages, injuries, expenses, liabilities (joint and several), penalties fines, attorneys fees, court costs, and any other expenses incurred by SJP Indemnities arising out of or in connection with (a) breach by Kat Florence of any of the terms, representations or warranties made by Kat Florence in this Agreement; or (b) Kat Florence product liability or trademark, patent or other proprietary right infringement or violation of any other rights; or (c) errors, omissions, fraudulent or negligent acts by Kat Florence, its employees, agents or subcontractors or (d) otherwise in connection with (i) any Advertising or materials featuring SJP or using her Name and Likeness; (ii) the performance of Kat Florence's duties and obligations under this Agreement; (iii) the production, distribution, promotion, marketing and sales of products including related product packaging; and/or (iv) the operation and management of its production and distribution facilities, however caused, Kat Florence shall not be obligated to indemnify SJP with respect to damages to the extent they are caused by active gross negligence or willful misconduct of SJP. The terms of this Paragraph 11 shall survive the expiration of the Term or earlier termination of the Agreement.

12.     Insurance. During the Term and for a period of four (4) years thereafter, Kat Florence agrees to provide and maintain at its own expense, the following insurance coverage from first-ranking, reputable companies approved by SJP:

(i)     SJP shall be named, as key cast on Kat Florence's cast insurance for the duration of Collection Photo Shoot and any other photo shoot days with limit of no less than USD$3,000,000, per occurrence and aggregate.

(ii) Worldwide Media Liability insurance (including errors and omissions coverage) with limits not less than USD$3,000,000 per occurrence and aggregate.

11



(iii)  Worldwide general liability insurance, including product liability coverage, with limits of not less than seven million five hundred thousand dollars (USD$7,500,000) aggregate limit.

Lender and SJP shall be named as an additional insured on coverages (i), (ii) and (iii) and all such policies shall include the defense of lawsuits covered by such insurance brought worldwide and shall be "occurrence based." Lender and SJP are afforded waiver of subrogation on coverages (i), (ii) and (iii). All policies listed under (i), (ii) and (iii) shall have a thirty (30) day written notice of cancellation or material change provision or endorsement. Kat Florence will provide SJP's Representatives, with certificates of insurance upon execution of this Agreement and within five (5) days of its request for same.

13.  Relationship of Parties.  Nothing contained in this Agreement shall be deemed or construed to place the parties in the relationship of partners, joint venturers, principal-agents, or employer-employee, it being understood that the parties hereto are and will remain independent contractors in all respects and neither Party shall have any right to obligate or bind the other Party in any manner whatsoever.

14.  Assignment.  Neither this Agreement nor any of the rights or obligations contained herein may be assigned or transferred by either Party without the prior written consent of the other Party.

15.  Authority to Contract.  Each of the Parties hereto represents and warrants that it has full right and power to enter into this Agreement, to perform all obligations to be performed by it hereunder, and to grant all rights hereunder granted without violating the legal or equitable rights of any other person or entity, and that the execution and performance of this Agreement will not conflict with or result in a breach of or default under any of the terms or conditions of any agreement to which either Party has agreed, or is a party, or may be bound.

16.  Merger; Modification.  This Agreement constitutes the entire agreement with respect to the subject matter contained herein and supersedes all previous communications and agreements between the Parties pertaining to the subject matter hereof, whether written or oral. The terms of this Agreement may not be modified, waived, amended, discharged or supplemented, or otherwise changed, except by a written document executed by an authorized representative of each Party.

17.  No Waiver.  A waiver by either Party of any of the terms or conditions of this Agreement in any instance shall not be deemed or construed to be a waiver of such term or condition for the future, or of any subsequent breach thereof, or any other term or condition of this Agreement. All remedies, rights, undertakings, obligations, and agreements contained in this Agreement shall be cumulative and none of them shall be in limitation of any other remedy, right, undertaking, obligation or agreement of either Party.

18.  Severability.  If any provision of this Agreement, as applied to either Party or to any circumstance, shall be adjudged by a court of competent jurisdiction to be void or unenforceable, whether at law or in equity, then such determination shall in no way affect any other provision of this Agreement, or the validity or enforceability of this Agreement.

19.    Jurisdiction. Venue. The Parties irrevocably agree that any action, suit or proceeding arising out of or relating to this Agreement or for recognition and enforcement of any judgment in respect hereof brought by a Party or its successors or assigns shall be brought and determined in only appropriate federal or state court located in New York County, State of New York, and the Parties irrevocably submit to the exclusive jurisdiction of the aforesaid courts for themselves and with respect of their property, generally and unconditionally, with regard to any such action, or proceeding arising out of or relating to this Agreement.

20.    Attorneys' Fees. If any action is necessary to enforce the provisions of this Agreement, including any claims or demands, or to interpret this Agreement, the prevailing party shall be entitled to reasonable outside attorneys' fees, costs and necessary disbursements in addition to any other relief to which it may otherwise he entitled.

21.    Captions: Structure. Section headings used in this Agreement are for convenience of reference only and shall not in any way affect the interpretation of any section of this Agreement or of the Agreement itself. In this Agreement, unless the content otherwise requires, it is agreed that:

(i)    singular, etc.: unless the context dictates otherwise, words in the singular include he plural, words in the plural include the singular, words importing the masculine gender include the feminine and the neutral, words importing the feminine gender include the masculine and neutral, words importing the neutral gender include the feminine and the masculine;

(ii)    headings, etc.: heading and paragraphs are for the purpose of organization only and shall not be used to interpret this Agreement;

(iii)    incorporation by reference, amendments: references to "this Agreement" include its Preamble, Recitals, Clauses, Subclauses, Paragraphs, Annexes, Appendices and Schedules (if any, which are incorporated herein by reference) and this Agreement as from time to time amended, unless otherwise stated;

(iv)    including: references to "including" shall mean "including, without limitation";

(v)    Applicable Law: means the law of the State of New York and the Parties hereby submit to the exclusive jurisdiction of New York Courts.

(vi)    Assignment: means the transfer of rights held by one Party to another party, including by way of merger, sale of shares or assets, operation of law and succession/estate laws.

22.    Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which when taken together shall be construed as a single instrument. This Agreement may be executed by facsimile or other electronic transmissions, and signatures on any facsimile or electronic transmission copy hereof shall be deemed authorized original signatures, as long as they are clearly witnessed by at least one witness for each signatory Party.

23.    No Third Party Beneficiaries. This Agreement is not for the benefit of any third party and shall be deemed not to give any right or remedy to such third party, whether referred to herein or not.

13

DocuSign Envelope ID: A4EC3932-792B-46BA-8E20-DEF327586626

24.   <u>Recitals</u>.  The recitals contained in this Agreement are true and correct and are incorporated herein by reference.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the day and date first above written.

WITNESS:                                            Kat Florence Design Limited

By: _/s/_ _____                          By: _/s/_ _____

Date:  October 9, 2015                              Title: Director


WITNESS:                                            Tandu Productions, Inc. ("Lender")

By: _/s/_   Alyssa Arminio                          By: _/s/_ _____

Date: October ___, 2015                             Title

14

## Appendix A to the Endorsement Agreement - Standard Terms and Conditions

The following standard terms and conditions (collectively, "Standard Terms") shall be incorporated into that certain Endorsement Agreement (the "Underlying Agreement") dated as of September 22, 2015, between Kat Florence Design Limited and Tandu Productions, Inc.

These Standard Terms, together with the Underlying Agreement and all exhibits, riders, appendices and/or schedules attached thereto (or to these Standard Terms), if any, shall be collectively referred to herein as the "Agreement". Defined terms hereunder shall be deemed to have the same meanings as set forth in the Underlying Agreement or as otherwise specified herein below.

### Independent Contractor/Insurance.

Lender acknowledges and agrees that it is an independent contractor and not an employee or agent of Kat Florence for any purpose, that Kat Florence is not responsible to Lender for any federal, state or local withholding or employer taxation obligations, social security benefits or unemployment compensation related to the services performed under this Agreement, and that Lender will file all required forms and make all necessary payments appropriate to Lender's independent-contractor tax status. This Agreement shall not be interpreted or construed to create an employment relationship, an association, agency, joint venture or partnership between the Parties or to impose any liability attributable to such a relationship upon either Party.

**Incapacity.** An event of incapacity shall be deemed to occur if SJP is unable to fully render material services in accordance with the terms of this Agreement, as reasonably determined by Kat Florence, as the result of any physical, mental or other impairment (e.g., SJP's illness, injury or mental disability; or impairment of SJP's appearance and/or mobility) ("Incapacity"). Without limiting any other rights of Kat Florence under this Agreement, in the event of Incapacity of SJP, Kat Florence shall have the right upon written notice to suspend its obligations to compensate SJP during such period of Incapacity of SJP and shall have the right, but not the obligation, to extend this Agreement by the length of any such suspension (for a period not to exceed sixty (60) days in aggregate during the Term). If any Incapacity of SJP continues for at least two hundred fifty (250) days in a row, Kat Florence shall have the right upon written notice to terminate this Agreement without any further obligation to SJP other than as provided under this Agreement.

### Confidentiality/Statements.

(a)      Lender, SJP and/or their representative(s) agree that any non-public information Lender, SJP and/or their representative(s) learn during the course of, or in connection with, SJP's engagement hereunder concerning Kat Florence's business operations, strategies, future plans, financial affairs, or any other non-public information concerning Kat Florence and/or its parent, subsidiary and/or affiliated companies, including the terms and provisions of this Agreement (collectively, the "Confidential Information"), is confidential and proprietary. SJP, Lender and/or their representative(s) shall not disclose to any third party any non-public information with respect to such Confidential Information, except:  (i) where such information has already been released to the public by Kat Florence or a third party other than Lender or SJP; (ii) to the extent necessary to comply with law or the valid order of a

15

court of competent jurisdiction or government agency, provided that, if permitted, SJP or Lender notify Kat Florence of said law or order; (iii) on a must-know basis to Lender and SJP's lawyers, accountants and other business representatives upon the express condition that SJP shall in such cases inform said representatives' of the obligation to comply with this confidentiality restriction; and (iv) to enforce the terms of this Agreement.

(b)     Kat Florence and its representative(s) agree that any non-public information relating to SJP's personal or professional life  (e.g., SJP's home address) that Kat Florence and/or its representative(s) learn during the course of, or in connection with, SJP's engagement hereunder, including the terms of this Agreement, shall be considered Confidential Information, and shall be held in strict confidence and not disclosed, revealed or shared with any other person except those individuals or entities authorized in writing by SJP in advance.

(c)     Other than as provided for in this subparagraph or in the rendition of services hereunder, Lender, SJP and/or their representative(s) shall not issue any press releases nor make any other public statements about SJP's services, Kat Florence, its affiliates, agents and/or employees, or any other party involved in this Agreement, in any media (including, without limitation, any online or print communications or Twitter or Facebook postings) without Kat Florence's prior written consent. Further, other than in the rendition of services hereunder, Lender, SJP and/or their representative(s) shall not use any name, logo, trademark or other proprietary mark of Kat Florence or its parents, subsidiaries, affiliates, licensees, sub licensees and/or assignees in any manner without Kat Florence's prior written approval.

(d)     Notwithstanding the foregoing, once Kat Florence has issued a press release or public statement about this Agreement, SJP shall have the right to make accurate, non-derogatory, non-disparaging, incidental statements or references about SJP's services for Kat Florence.

**Entire Understanding.**

This Agreement contains the entire understanding of the parties as to the subject matter hereof, and all prior communications and agreements, written or oral, express or implied, as to such subject matter are superseded hereby. This Agreement may not be modified, altered or amended in any way except by an instrument in writing signed by all Parties. Paragraph and subparagraph headings as used in this Agreement are for convenience only and are not a part thereof and will not be used to interpret any provision of this Agreement. No officer, employee or representative of Kat Florence has any authority to make any representation, warranty or agreement not contained in this Agreement, and Lender and SJP acknowledge that the Lender and SJP have not executed this Agreement in reliance upon any representation, warranty or agreement not expressly set forth in this Agreement. Each individual and entity executing this Agreement hereby represents and warrants that he, she or it has the capacity set forth on the signature page(s) hereof with full power and authority to bind the Party on whose behalf he, she or it is executing this Agreement to the terms hereof. The Parties have read and understand this Agreement and have had the opportunity to consult with counsel and/or personal representatives with respect hereto.

16

**Appearance Conditions and Working Hours.**

**"Collection Photo Shoot"**

-    SJP agrees that during the Collection Photo Shoot day a mutually agreed upon number of different looks approved by SJP will be shot, with no restrictions on the number of photos taken per look, provided that only two (2) of the approved photos per "look" may be used as permitted herein and and in the manner approved by SJP.  SJP will have approval over the set-ups for each shot.

-    SJP shall be entitled to work with: Make-up Stylist, Hair Stylist, Manicurist and Stylist (collectively, the "Stylists") of her choice. Kat Florence agrees that choice of Stylists resides solely with SJP and furthermore agrees to pay all fees and expenses (including travel) related to the Stylists. Kat Florence will negotiate the Stylists' fees and expenses directly with their representatives.

-    SJP shall be entitled to first-class, exclusive pick-up and transportation by her designated car service and driver from and to her residence (or other designated pick-up location) on the shooting day, for herself and her team.

-    Working period of up to seven (7) consecutive hours from call time to release (including hair, make-up, wardrobe and breaks) which will commence at a mutually agreed-upon start time.

-    Lunch break shall be one (1) hour, at SJP's choice of time.

-    First class catering will be provided for SJP and her team, subject to SJP's choice of food and beverage.

-    SJP shall be entitled to take reasonable breaks at her discretion over the course of the Collection Photo Shoot day.

-    Kat Florence will choose the photographer after consulting with SJP and with SJP's final written approval.

**"Handshake Event"**

-    According with the terms of this Agreement, SJP undertakes to participate in one (1) "Handshake Event" on October 8, 2015.

-    The event will take place at CAA's office in New York, to announce the 5-year relationship between SJP and Kat Florence.

-    SJP's personal appearance at the Handshake Event will be required for a maximum of one and a half (1.5) hours from call time to release, during which, pictures of SJP and Kat Florence designer, Kristy Ann Florence will be taken by a mutually approved photographer for mutually approved usage. SJP will have approval over the set-ups of such photographs.

17

-       SJP shall be entitled to work with Stylists of her choice (it being agreed that only designated hair and make-up stylists will be engaged for such day). Kat Florence agrees that choice of Stylists resides solely with SJP and furthermore agrees to pay all fees and expenses (including travel) related to the Stylists. Kat Florence will negotiate the Stylists' fees and expenses directly with their representatives.

-       Up to four (4) pictures will be selected by SJP and Kat Florence and, subject to the terms and conditions set forth in this Agreement, licensed for immediate publication to mutually agreed upon outlets to announce the partnership with a mutually approved press release.

-       SJP shall be entitled to first-class, exclusive pick-up and transportation by her designated car service and driver from and to her residence (or other designated pick-up location) on the shooting day, for herself and her team.

### "Flagship Store Opening"

-       In Spring 2016 (date to be determined and mutually agreed by Parties and subject to SJP's availability) SJP shall participate in the opening of a stand-alone Kat Florence flagship store in a major European capital (i.e., London, Berlin or Rome) mutually agreed-upon by the Parties.

-       SJP's personal appearance at the Flagship Store Opening day event will be required for a maximum of two (2) consecutive hours from call time to release (plus travel time of up to thirty (30) minutes each way), during which, pictures of SJP and Kat Florence designer, Kristy Ann Florence will be taken only by a mutually agreed-upon photographer.

-       For the avoidance of doubt, SJP shall be entitled to travel and expenses, as provided in Paragraph 4 of the Agreement.

-       The contracting parties will agree on a defined time schedule and content in due course, including the number of people attending the event, the specific services and the press in attendance at the event, if any.

-       Kat Florence will choose a photographer, after consulting with SJP and subject to SJP's final written approval.

-       For the Flagship Store Opening, SJP shall be entitled to work with Stylists of her choice. Kat Florence agrees that choice of Stylists resides solely with SJP and furthermore agrees to pay all fees and expenses (including travel) related to the Stylists. Kat Florence will negotiate the Stylists' fees and expenses directly with their representatives.

-       A mutually agreed-upon number of pictures will be selected by SJP and Kat Florence and, subject to the terms and conditions set forth in this Agreement, will be used in accordance with the terms of this Agreement.

-       SJP will be provided with a private VIP area for her exclusive use during the Flag Store Opening.

**"Yearly Production Appearance"**

-       The dates, times and locations for the Yearly Production Appearances shall be mutually agreed-upon by the Parties, subject to SJP's availability; provided that such Yearly Production Appearances shall take place in New York City and shall not be in an outdoor or public location.

-       SJP shall be entitled to work with Stylists of her choice. Kat Florence agrees that choice of Stylists resides solely with SJP and furthermore agrees to pay all fees and expenses (including travel) related to the Stylists. Kat Florence will negotiate the Stylists' fees and expenses directly with their representatives.

-       SJP shall be entitled to first-class, exclusive pick-up and transportation by her designated car service and driver from and to her residence (or other designated pick-up location) on the appearance days, for herself and her team.

-       Working period of up to six (6) consecutive hours from call time to release (including  hair, make-up, wardrobe and breaks) which will commence at a mutually agreed-upon start time.

-       Lunch break shall be one (1) hour, at SJP's choice of time.

-       First class catering will be provided for SJP and her team, subject to SJP's choice of food and beverage.

-       SJP shall be entitled to take reasonable breaks at her discretion over the course of each Yearly Production Appearance day.

-       Kat Florence will choose the photographer and/or videographer after consulting with SJP and with SJP's final written approval.  SJP will have approval over the set-ups for each shot.

**"Personal Appearances"**

-       The dates, times and locations for the Personal Appearances shall be mutually agreed-upon by the Parties, subject to SJP's availability, and shall last for up to one and one half (1.5) hours each from call time to release (plus travel time of up to thirty (30) minutes each way).

-       The schedule and content of the Personal Appearances (including the specific services to be rendered by SJP, the number of people attending the event and the press in attendance at the event, if any) shall be mutually agreed-upon by the Parties in advance of each Personal Appearance.

-       SJP shall be entitled to work with Stylists of her choice. Kat Florence agrees that choice of Stylists resides solely with SJP and furthermore agrees to pay all fees and expenses (including travel) related to the Stylists. Kat Florence will negotiate the Stylists' fees and expenses directly with their representatives.

-       For the avoidance of doubt, SJP shall be entitled to travel and expenses, as provided in Paragraph 4 of the Agreement.

19

- If applicable, Kat Florence will choose a photographer, after consulting with SJP and subject to SJP's final written approval.

- A mutually agreed-upon number of pictures will be selected by SJP and Kat Florence and, subject to the terms and conditions set forth in this Agreement, will be used in accordance with the terms of this Agreement..

- SJP will be provided with a private VIP area for her exclusive use during each Personal Appearance.

**Tandu Productions, Inc.**

**Kat Florence Design Limited**

20

DocuSign Envelope ID: A4EC3932-792B-468A-8E20-DEF327586625

**Appendix B to the Endorsement Agreement - Acknowledgment by SJP**

In order to induce Kat Florence to enter into the above Agreement and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, SJP, by signing below, hereby represents, warrants and agrees, to and for the express benefit of Kat Florence and its licensees, successors and assigns, that (i) SJP is familiar with the material terms and conditions of the Agreement; (ii) Lender has the right to enter into the Agreement and to grant all rights therein; (iii) SJP hereby agrees to be bound by the terms, rights and obligations set forth in the Agreement, as they relate to SJP (in SJP's individual capacity); and (iv) unless Lender ceases to exist and SJP is substituted as a direct party hereto, SJP agrees to look solely to the compensation and expenses in connection with the Agreement.

WITNESS:                                            Sarah Jessica Parker

By: /s/ _____                                By: /s/ _____
    Alyssa Arminio

Date: October      , 2015

## FIRST AMENDMENT TO ENDORSEMENT AGREEMENT

Reference is hereby made to the endorsement agreement ("Agreement") dated as of October 9, 2015, by and between Kat Florence Design Limited ("Kat Florence"), on the one hand, and Tandu Productions, Inc. ("Lender") for the services of Sarah Jessica Parker ("SJP"), on the other hand, pursuant to which Agreement Lender has agreed to furnish certain services of SJP and the right to use SJP's name and approved likeness to Kat Florence in connection with the advertisement and promotion of Kat Florence's jewelry products, on the terms set forth therein.

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and notwithstanding anything to the contrary contained in the Agreement, the Agreement is hereby amended such that Subparagraphs (i), (ii), and (iii) of Paragraph 3 of the Agreement are deleted in their entirety and replaced by the following new Subparagraphs (i), (ii), and (iii):

"(i) Fixed compensation in the aggregate amount of Seven Million Five Hundred Thousand U.S. Dollars ($7,500,000 U.S.) (the "Guaranteed Flat Fee") as follows:

(a)     With respect to the 2015 calendar year, a total of Two Hundred Fifty Thousand U.S. Dollars ($250,000 U.S.), to be paid no later than October 10, 2015; provided that Kat Florence shall have no right to use SJP's Name and Likeness or any materials created hereunder until such amount has been received by Lender;

(b)     With respect to the 2016 calendar year, a total of One Million Six Hundred Twenty-Five Thousand U.S. Dollars ($1,625,000 U.S.) shall be paid as follows: an initial installment of Three Hundred Seventy-Five Thousand U.S. Dollars ($375,000 U.S.), to be paid on January 1, 2016, an additional installment of Five Hundred Thousand U.S. Dollars ($500,000 U.S.), to be paid on April 1, 2016, and two (2) additional quarterly installments of Three Hundred Seventy-Five Thousand U.S. Dollars ($375,000 U.S.) each, to be paid on July 1, 2016 and October 1, 2016;

(c)     With respect to the 2017 calendar year, a total of One Million Five Hundred Thousand U.S. Dollars ($1,500,000 U.S.) shall be paid as follows: in four (4) quarterly installments of Three Hundred Seventy-Five Thousand U.S. Dollars ($375,000 U.S.) each, to be paid on January 1, 2017, April 1, 2017, July 1, 2017 and October 1, 2017;

(d)     With respect to the 2018 calendar year, a total of One Million Five Hundred Thousand U.S. Dollars ($1,500,000 U.S.) shall be paid as follows: in four (4) quarterly installments of Three Hundred Seventy-Five Thousand U.S. Dollars ($375,000 U.S.) each, to be paid on January 1, 2018, April 1, 2018, July 1, 2018 and October 1, 2018;

(e)     With respect to the 2019 calendar year, a total of One Million Five Hundred Thousand U.S. Dollars ($1,500,000 U.S.) shall be paid as follows: in four (4) quarterly installments of Three Hundred Seventy-Five Thousand U.S. Dollars ($375,000 U.S.) each, to be paid on January 1, 2019, April 1, 2019, July 1, 2019 and October 1, 2019;

(f)     With respect to the 2020 calendar year, a total of One Million One Hundred Twenty-Five Thousand Dollars ($1,125,000 U.S.), shall be paid as follows: in three (3) quarterly installments of Three Hundred Seventy-Five Thousand U.S. Dollars ($375,000 U.S.) each, to be paid on January 1, 2020, April 1, 2020 and July 1, 2020;

(ii) Starting on January 1, 2016 and ending on December 31, 2020 (the "Profit Period"), an additional commission of 10% of 100% of Kat Florence Company Profit (as defined below), solely to the extent that such Kat Florence Company Profit exceeds Five Million U.S. Dollars ($5,000,000 U.S.) (the "Profit Threshold") in each applicable calendar year of such period (the "SJP Profit Share").  For clarification, the Kat Florence Company Profit earned in each calendar year of the aforementioned period shall not be cross-collateralized with the Kat Florence Company Profit earned in any other year(s) for the purpose of determining whether the

Profit Threshold has been met, i.e., the calculation of the SJP Profit Share (if any) shall be calculated on a year-by-year basis without regard to whether the Profit Threshold was or will be met in any previous or subsequent year(s). By way of example only: if the Kat Florence Company Profit for a calendar year during the Profit Period equals Four Million U.S. Dollars ($4,000,000 U.S.), then the Profit Threshold has not been met and there will be no payments due for the SJP Profit Share for that year; however, if the Kat Florence Company Profit for a calendar year during the Profit Period equals Six Million U.S. Dollars ($6,000,000 U.S.), then the Kat Florence Company Profit exceeds the Profit Threshold by One Million U.S. Dollars ($1,000,000) and the SJP Profit Share payable for that year will be equal to One Hundred Thousand U.S. Dollars ($100,000 U.S.) [$1,000,000 x 10% = $100,000].

(iii) Any SJP Profit Share will be paid to Lender within ninety (90) days following Kat Florence's yearly financial statements' closure (i.e., within ninety [90] days after November 1 of the applicable year). The Guaranteed Flat Fee and the SJP Profit Share are hereinafter collectively referred to as the "Consideration"."

Each capitalized term used and not otherwise defined herein shall have the meaning ascribed thereto in the Agreement. The Agreement, as modified by the terms set forth herein, is hereby confirmed and ratified in all respects.

[Signature Page Follows]

This amendment may be executed in any number of counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same amendment. Signatures of the parties transmitted by facsimile or by electronic mail in PDF format, or by any other electronic means intended to preserve the original graphic and pictorial appearance of a document, shall be deemed to be their original signatures for all purposes.

**Accepted and agreed by:**

KAT FLORENCE DESIGN LIMITED

By: _Victor Stanciulescu_____

Its: _Director_____

Date: _03/21/2016_____


TANDU PRODUCTIONS, INC.

By: _____

Its: _____

Date: _____3/18/2016_____

**Jeremy Friedman**

_____

**From:**          Jeremy Friedman
**Sent:**          Tuesday, September 11, 2018 11:42 AM
**To:**            Jeremy Friedman
**Subject:**       FW: KAT FLORENCE piece details


**From:** Alyssa Arminio <alyssa@prettymatches.com>
**Subject: RE: KAT FLORENCE piece details**
**Date:** March 29, 2016 at 9:52:10 PM GMT+7
**To:** KAT FLORENCE <kat@katflorence.com>, SJP <sjp@prettymatches.com>

Dear Kat,
Thank you for sending this! These pieces are all safe and accounted for.
We will be certain to share with Erin, as well.
Thank you!
Best,
Alyssa
_____
From: KAT FLORENCE [kat@katflorence.com]
Sent: Tuesday, March 29, 2016 10:44 AM
To: Alyssa Arminio; SJP
Subject: KAT FLORENCE piece details

Hello Sarah and Alyssa,
I hope you are doing well and Sarah Jessica…….Happy Birthday week! Wishing you a little down time for
your birthday!

I have attached the details of the pieces I left with you in NY for your records. Please also pass on to Erin. I
would so love to have you both wear the pieces as much as possible!! As the collection production completes in
the next three months, I would like to give you additional new pieces as you suggested.

Sarah Jessica - the planning for the charity auction is coming along well. We are working towards a June
auction date. The auction house will share information to the Hong Kong media a month prior to the show date.
I will share with you more as this develops, but the team is very assuring we will raise a significant amount for
'A Drop of Life' - I'm thinking I would like to join the team when they go to Nepal. Lets see - I travelled there
once before and it is such a beautiful country. It would be lovely if you could show support by following my
Instagram account, let me know if you are comfortable with this.

Have a wonderful week.

Sincerely
Kat

## Kat Florence lent items to SJP

| Product ID | Type | Gold | Year | Picture | Qty | Note |
|---|---|---|---|---|---|---|
| KFD015 | Necklace | | 2016 | | 1.00 | SJP |
| KFD060 | Earrings | | 2016 | | 1.00 | SJP |
| KFD068 | Ring | | 2016 | | 1.00 | SJP |
| KFD057 | Necklace | | 2016 | | 1.00 | SJP |
| KFD087 | Ring | | 2016 | | 1.00 | SJP |

## Kat Florence lent items to SJP

| Product ID | Type | Gold | Year | Picture | Qty | Note |
|---|---|---|---|---|---|---|
| KFD035 | Earrings | | 2016 |  | 1.00 | SJP |
| KFD050 | Ring | | 2016 |  | 1.00 | SJP |
| KF644 | Ring | | 2016 |  | 1.00 | SJP |
| KF514 | Earrings | | 2016 |  | 1.00 | SJP |
| | | | | | 9.00 | |

| Retail price | |
|---|---|
| $ | 7,963.40 |
| $ | 7,574.80 |
| $ | 10,930.68 |
| $ | 7,603.80 |
| $ | 18,923.08 |

| Retail price | |
|---|---|
| $ | 12,615.00 |
| $ | 16,069.48 |
| $ | 27,115.00 |
| $ | 40,706.72 |
| $ | 149,501.96 |